Howry, J.,
delivered the opinion of the court:
By authority of law, the Secretary of the Navy, on May 8, 1885, published an advertisement and notice relating to the construction of new steel cruising vessels, in which he extended an invitation to all engineers and mechanics of established reputation to submit plans, designs, and specifications to the Secretary for vessels, or any part thereof, of the classes authorized by the naval appropriation act of March 3, 1885. Plans were required to be submitted within the period of sixty days from May 15, 1885, with the promise that should any plan or design submitted pursuant to the advertisement be adopted or used, a liberal compensation would be paid therefor.
Pursuant to the advertisement a number of plans and specifications were submitted. Accompanying the plans and specifications submitted by Lundborg was a letter stating that if the Government should adopt them or similar ones for a vessel of larger displacement the payment of a royalty would be required, but in the event of his offer being rejected the return of the plans was requested as soon as possible without being-copied.
The Secretary convened a “board on additional unarmored vessels,” with power to examine all the plans and models offered and to report whether any of them were worthy of adoption.
On September 18, 1885, the board made an elaborate report to the Secretary, stating that the general plans submitted in response to the advertisement had in no case commanded unqualified approval. Accompanying the report was a classification of those plans, models, and designs of a general nature, or involving a design of a vessel more or less complete, with a note to the effect that none of this class was recommended for adoption, because in the majority of cases the plans were not in accordance with the conditions of the act under which the advertisement was made. The plans and .specifications of plaintiff’s intestate were enumerated within the classification.
For some reason not disclosed the Lundborg plans were not returned. There is no record of any formal demand or written *31 application for their return subsequent to the .letter which accompanied their transmission to the Secretary. But it seems that some time after the report of the board the original claimant personally and by attorney called at the office of the Secretary of the Navy for the plans submitted by the constructor, and though a diligent search was made for them they were not found. Subsequently the plans and specifications were found in the possession of the Chief Naval Constructor, by whom they were transmitted, in February, 1886, to one of the committees of Congress on the call of the committee after the introduction of a bill for the relief of the owner of the plans. It does not appear that when the submitted papers were found in the office of the Chief Naval Constructor that any demand was made upon him to return them. Nothing was said to him about their return nor to the Secretary after the first call.
The gravamen of the action lies in the allegation that the Lundborg plans contained novel features which were adopted and used in the construction of cruisers and battle ships; that the Navy Department availed itself of the information supplied by his plans and specifications in this: That the ratio of the length of ships in our new Navy, as well as the breadth of sugIi ships, was changed in the construction of cruisers; that vertical engines instead of horizontal were adopted because all of the naval vessels of the United States were fitted with horizontal engines before 1885, but since that time vertical engines havebeen substituted; that subsequent to the time the alleged new plans were submitted all vessels of the Navy contained provisions for trimming tanks, whereas no vessels were fitted with trimming tanks before the Lundborg plans were offered; and finally, that the present plan of closing screw shafts in the extension of the hulls of vessels was substantially the same as that shown by the plan submitted bjr plaintiff’s intestate. Next, that the receipt of the plans and specifications of this constructor and the failure to return them to him constituted an acceptance of the proposition contained in the letter transmitting them, whereby it is obligatory upon the part of the Government to pay the value put upon the plans, and the details which explain their meaning. Injury to the constructor in not having the plans and *32 specifications for use elsewhere is alleged with this part of the complaint.
It is argued that .under the instructions of the Secretary of the Navy the board appointed by him to consider all the plans was not permitted to consider those novel features suggested by Lundborg.
This, however, is not material to the inquiry. The cause of action is not that the intention of Congress was misconstrued by the Secretary of the Navy in the instructions given to those charged with the duty of examining, the models, but rather whether a contract existed by the terms of the advertisement and the subsequent action of the Government.
The promise to pay any of the persons submitting designs pursuant to the advertisement was dependent entirely upon the subsequent adoption or use by the Government of the plans submitted, and not upon anything in the nature of counter propositions from others or arising out of the instructions given by the Secretary of the Navy to his subordinates or those designated by him to examine the papers transmitted pursuant to the printed notice. The question here becomes narrowed, then, to the adoption by the Government, or the use which it has since made of the plans and specifications offered by Lundborg.
Necessarily there must have been something previously unknown to naval architecture contained in the designs offered by Lundborg to warrant the statement that the Government adopted them. Without novelty or suggestions peculiar to his plans, there was nothing to adopt and nothing which the Government did not already have the right to use. It neither appears that the models were ever formally adopted or that the suggestions contained in the specifications were used in the construction of any of the cruisers which since that time have become a part of the Navy. Upon the questions of actual adoption or subsequent use the findings of fact are adverse to the contentions of the plaintiff. These findings dispose of the claim of novelty in the designs. With this branch of the case out of the way there is nothing left to be considered but the question of liability growing out of the failure of the Government to return the plans.
*33 There is no pretense that, had the plans and specifications been returned, an}*- actual use could certainly have been made of them. It is not claimed that there was any probability that private purchasers could at any time be found. Nations and not individuals wrere really the only customers which a constructor could possibly expect to use designs in the building of cruisers or battle ships of any kind. This being so, and there being no contention that the constructor was in communication or negotiation with any government in connection with the use of his designs, there is nothing tangible in the assertion that he was injured by the-retention of his suggestions. It is true that an effort has been made to show that if the plans and specifications had been in possession of their owner immediately after the board had passed upon them the constructor might have prosecuted his acquaintance with an influential subject of China, and through him might have induced the Government of that country to inspect his designs and possibly to use them. But here again there is nothing sufficient to enable us to say that the constructor was injured. It does not appear that this subject of the Chinese Empire had any authority to negotiate in the premises. It does not appear that, even if he had, an inspection of the designs would have resulted in anything profitable.
Captain Lundborg may have been subjected to some annoyance or even inconvenience in the neglect of those officials of the Navy Department who, coming into the possession of the plans and specifications, failed to return them to him. The constructor was rightfully entitled to be repossessed of his plans after it was determined neither to formally adopt them nor to use the suggestions which the specifications contained. We know of no rule which justified the retention of the plans by the subordinates of the Department without the knowledge of the Secretary of the Navy. The circumstances under which they were received would not have justified the Secretary himself to have refused to return them to the owner. But the claim for compensation is wholly speculative. There is no legal standard by which the damages claimed can be measured, because there is no evidence that damages were actually sustained. Where the principles and ideas upon which alleged *34 damages are claimed can not be reduced to a money standard, or where they do not form the subject of legal calculation in dollars and cents, there can be no recovery. (City of Memphis v. Brown, 2 Wall., 289.) Here the proof of the element of value is too uncertain and inadequate to hold that the Government is pecuniaria liable for withholding the plans and specifications.
If the plans were wrongfully withheld- — no element of contract appearing — the act of the officers of the Government would be such a tort as would exclude the jurisdiction of the court.
We have decided the matter upon the theory that the minds of the parties sufficiently met to constitute an implied promise upon the part of the Government to return the plans if they were neither adopted nor used by the United States. And, tested by this consideration the petition must be dismissed.